ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| WILFREDO BÁEZ ACOSTA  Parte Recurrente  v.  JUNTA DE LIBERTAD BAJO PALABRA  Parte Recurrida | TA2025RA00249 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Libertad Bajo Palabra  Caso Núm.: 148984  Confinado Núm.: B7-16900  Sobre: Concesión Libertad Bajo Palabra |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Comparece ante nos, el Sr. Wilfredo Báez Acosta (en adelante, el "señor Báez Acosta" o "recurrente"), mediante recurso de *revisión judicial* presentado el 23 de septiembre de 2025. Nos solicita que revoquemos la *Resolución* emitida el 10 de junio de 2025 y notificada el 5 de agosto de 2025, por la Junta de Libertad Bajo Palabra (en adelante, "JLBP" o "recurrida"). Mediante el aludido dictamen, la JLBP determinó que carece de jurisdicción para atender el caso.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I.**

Del expediente ante nuestra consideración se desprende que, desde el 1997, el señor Báez Acosta se encuentra extinguiendo una pena de ciento ochenta (180) años, seis (6) meses y un (1) día en la institución correccional Guayama 1000, por múltiples delitos, entre ellos, tres (3) cargos por el delito de secuestro y varias infracciones

a la derogada Ley Núm. 17 de 19 de enero de 1951, mejor conocida como la "Ley de Armas de Puerto Rico".

El 9 de septiembre de 2024, el recurrente cumplió el mínimo de su *Sentencia*, conforme a Ley Núm. 85-2022. Por tal razón, el Departamento de Corrección y Rehabilitación (en adelante, "DCR") refirió su caso a la JLBP para considerar su elegibilidad para dicho beneficio. La vista correspondiente fue pautada para esa misma fecha. No obstante lo anterior, la referida audiencia fue suspendida con el fin de corroborar la jurisdicción de la JLBP, según lo dispuesto por la Ley Núm. 85-2024.

A tales efectos, la JLBP emitió dos *Resoluciones* solicitando al DCR una certificación que acreditara el cumplimiento de sentencia respecto a los delitos excluidos por el precitado estatuto, específicamente, los tres (3) casos de secuestro o en su defecto, una hoja de liquidación de sentencia que disponga la fecha exacta en la que el señor Báez Acosta cumple la pena por la comisión de dichos delitos. El 13 de mayo de 2025, el DCR emitió la correspondiente *Certificación* mediante la cual detalló que el recurrente cumplirá la pena de sesenta (60) años por los delitos de secuestro el 24 de junio de 2031.

En consecuencia, el 10 de junio de 2025, la JLBP emitió una *Resolución* a través de la cual determinó que carece de autoridad para entender el presente caso, toda vez que la Sección 3 de la Ley Núm. 85-2024, *supra*, excluye de su jurisdicción a las personas convictas por ciertos delitos, entre ellos el secuestro. Insatisfecho con dicha decisión, el 21 de agosto de 2025, el señor Báez Acosta presentó una *Moción de Reconsideración*, la cual fue declarada "No Ha Lugar" el 26 de agosto de 2025.

Inconforme con lo anteriormente resuelto, el 23 de septiembre de 2025, el recurrente compareció ante nos mediante el recurso de *revisión judicial* de epígrafe y alegó la comisión del siguiente error:

**ERRÓ LA JUNTA DE LIBERTAD BAJO PALABRA AL DECLARARSE SIN JURISDICCIÓN PARA CONSIDERAR AL SEÑOR BAÉZ ACOSTA TRAS APLICAR, DE FORMA RETROACTIVA, LA LEY 85 DE 2024 A LA SENTENCIA IMPUESTA POR EL DELITO DE SECUESTRO. ESTO ANTERIOR, CUANDO ELLO RESULTA EN UNA CLARA VIOLACIÓN CONSTITUCIONAL CONTRA LA APLICACIÓN DE LEYES EX POST FACTO, EL DEBIDO PROCESO DE LEY Y EL DERECHO A LA REHABILITACIÓN DEL AQUÍ PETICIONARIO.**

El 22 de octubre la JLBP presentó su Escrito en Cumplimiento de Resolución.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión Judicial de las Determinaciones Administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,*

172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el

organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

## B. Junta de Libertad Bajo Palabra

El Artículo VI, Sección 19 de la Constitución de Puerto Rico establece como política pública que el Estado habrá de: "[...] reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1.

En este contexto, la Ley Núm. 118 de 22 de julio de 1974, según enmendada (4 LPRA sec. 1501, *et seq.*) (Ley Núm. 118-1974), creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación. Entre los poderes conferidos a la Junta está el decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. De igual forma, en el uso de su discreción, la Junta tendrá facultad para revocar la libertad bajo palabra a cualquier liberado que, por su conducta, revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra. Artículo 3 (a) y (b) de la Ley Núm. 118-1974 (4 LPRA sec. 1503).

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. *Benítez Nieves v. ELA et al.,* 202 DPR 818 (2019). Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias. Artículo 3 de la Ley Núm. 118-1974, *supra.* Así, el liberado bajo palabra tiene una libertad cualificada. *Benítez Nieves v. ELA et al.*, *supra*; *Maldonado Elías v. González Rivera,* 118 DPR 260 (1987).

En armonía con lo previamente expuesto y en lo concerniente a la controversia de autos, la Asamblea Legislativa promulgó la Ley Núm. 85-2022, *supra*, con el propósito de ampliar, bajo un enfoque justo, retributivo y rehabilitador, el número de confinados que pueden solicitar el beneficio de libertad bajo palabra. *Véase*, Exposición de Motivos de la Ley Núm. 85-2022. Dicho estatuto cumplió su objetivo mediante dos enmiendas, a saber: (1) al Artículo 308 de la Ley Núm. 146-2012, según enmendada, mejor conocida como "Código Penal de Puerto Rico", que regula los términos de elegibilidad para la consideración de la JLBP y (2) al Artículo 3 de la Ley Núm. 118-1974, *supra*, que dispone las facultades, deberes y atribuciones de dicha Junta.

No obstante lo anterior, dos años después, se aprobó la Ley Núm. 85-2024, *supra*, con el fin ulterior de limitar el alcance de la mencionada legislación y atemperarla al contexto histórico y social en el que nos encontramos, mediante la enmienda de los artículos antes citados.

En virtud de ello, la legislatura dispuso que las personas convictas por los delitos de agresión sexual en cualquiera de sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, quedaran excluidas del disfrute del privilegio de libertad bajo palabra. *Véase*, Exposición de Motivos, Ley Núm. 85-2024.

En detalle, a tenor con las enmiendas de la Ley Núm. 85-2024, *supra*, tanto el Artículo 308 del Código Penal, *supra*, como el artículo 3 de la Ley Núm. 118-1974, *supra*, disponen, en su parte pertinente, que las personas convictas por los delitos antes enumerados no podrán acogerse al privilegio de libertad bajo palabra, sin consideración a la fecha del acto delictivo ni al código penal o ley especial bajo la cual se dictó la sentencia, incluyendo expresamente

los Códigos Penales de 1974, 2004 y 2012.33 LPRA sec. 5416; 4 LPRA sec. 1503.

Lo anterior implica que toda persona que se encuentre privada de libertad por haber sido convicta de alguno de los referidos delitos, incluyendo el de secuestro, no podrá beneficiarse del privilegio de libertad bajo palabra hasta tanto cumpla en su totalidad la pena impuesta por dicho delito, y, por consiguiente, la JLBP carecerá de jurisdicción para entender o evaluar solicitudes relacionadas a dichos casos.

### C. Leyes Ex Post Facto

La Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]o se aprobarán leyes *ex post facto* ni proyectos para condenar sin celebración de juicio". 1 LPRA. Art. II, Sec. 12, LPRA, Tomo I.

A tenor con dicho mandato constitucional, la prohibición contra leyes *ex post facto* se ha interpretado como una salvaguarda esencial del debido proceso de ley. En ese contexto, existen cuatro modalidades de estatutos que se consideran *ex post facto*, a saber: (1) aquellos que criminalizan y sancionan un acto que, al momento de su comisión, no constituía delito; (2) los que agravan la tipificación de un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) los que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia reduciendo el quantum de prueba de evidencia necesario para encontrar culpable al acusado. *González v. E.L.A.,* 167 DPR 400, 408 (2006); *Calder v. Bull,* 3 US 386 (1989).

Es menester destacar que la referida garantía constitucional solamente se activa en aquellos casos en que la aplicación retroactiva de una nueva disposición legal impone condiciones más onerosas que las vigentes al momento de la comisión del delito. *González v. E.L.A., supra,* pág. 408-409 (citando a *Weaver v.*

*Graham,* 450 US 24 (1981)). Tal onerosidad puede manifestarse, entre otros aspectos, en la extensión del término de reclusión que deba cumplir el convicto, en contravención con la protección que proscribe la imposición retroactiva de una pena más severa. *González v. E.L.A., supra,* pág. 409.

Conforme ha resuelto el máximo foro federal, la extensión del periodo de encarcelamiento puede derivarse de la eliminación de beneficios tales como bonificaciones o la libertad bajo palabra, toda vez que lo esencial es determinar si dicha eliminación retroactiva incide de manera negativa en la situación jurídica del convicto. *Weaver v. Graham, supra,* pág. 32; *Lynce v. Mathis,* 519 US 433 (1997). Lo anterior obedece a que la elegibilidad de una persona confinada para una reducción en su término de prisión constituye un elemento determinante tanto en la decisión del acusado de negociar un acuerdo de culpabilidad como en el cálculo de la pena que el juez habrá de imponer. *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974).

Nuestro Tribunal Supremo, en el caso *González v. ELA, supra,* tuvo la oportunidad de interpretar el alcance de la cláusula constitucional relativa a las leyes *ex post facto* en el contexto de la revocación del beneficio de supervisión electrónica. En esa ocasión, determinó que dicha revocación no contravenía la protección constitucional contra la retroactividad de las leyes penales, ya que el programa de supervisión electrónica no estaba vigente al momento en que los peticionarios cometieron los delitos. *Íd.* págs. 415-416. Por consiguiente, al haberse creado y otorgado el privilegio con posterioridad, su eliminación no representaba una alteración de la pena establecida para los hechos ocurridos. *Íd.*

En resumidas cuentas, resulta incompatible con la protección constitucional contra las leyes *ex post facto* aplicar retroactivamente una disposición legal que suprima a ciertos convictos la posibilidad

de cualificar para la libertad bajo palabra o la supervisión electrónica cuando los beneficios o privilegios en cuestión estaban disponibles al momento de la comisión del delito y su posterior eliminación altera negativamente las condiciones originales de la pena impuesta. *González Fuentes v. ELA, supra*, pág. 409.

### D. Principio de Favorabilidad

Como norma general, la ley aplicable a una conducta delictiva es la que estaba en vigor al momento de su comisión. *Pueblo v. González*, 165 DPR 675, 684 (2005); *Pueblo v. Rexach Benítez*, 130 DPR 273, 301 (1992). La excepción a la referida norma la constituye el principio de favorabilidad, consagrado en el artículo 4 del Código Penal, el cual establece lo siguiente:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.
>
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
>
> (b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.
>
> (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.
>
> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. 33 LPRA sec. 5004.

En esencia, el principio de favorabilidad establece que cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre que ello resulte más favorable que lo dispuesto en la ley vigente al momento de la comisión de los hechos.

*Pueblo v. Hernández García,* 186 DPR 656, 673 (2012). No obstante lo anterior, es menester subrayar que el principio de favorabilidad carece de rango constitucional, por lo que la aplicación retroactiva de leyes penales más beneficiosas constituye una facultad discrecional del legislador. *Íd.* Así, para aplicar retroactivamente una norma penal más favorable al acusado, es preciso, en primer término, verificar que el legislador no haya limitado expresamente dicho efecto. *Íd.*

En lo que respecta a la controversia de autos, una ley intermedia se define como aquella que estuvo en vigor únicamente durante un período posterior a la comisión de los hechos y anterior a la imposición de la sentencia. E. L. Chiesa Aponte, *Derecho Penal Sustantivo,* 2ª ed. Publicaciones JTS, 2013, pág. 61. En tales circunstancias, se configura una sucesión de tres estatutos penales: (1) el aplicable al momento de la comisión de los hechos, (2) el vigente al dictarse la sentencia y (3) el que rigió entre ambos momentos, conocido como la ley intermedia. *Íd.*

Ahora bien, en lo que atañe al principio de favorabilidad, la dificultad jurídica se presenta cuando la ley intermedia resulta más beneficiosa para el acusado que las otras dos. *Íd.* En ese contexto, el profesor Ernesto L. Chiesa sostiene que las leyes intermedias más favorables deben aplicarse retroactivamente, puesto que lo contrario daría lugar a una situación arbitraria e injustificada en la cual dos personas que cometieron la misma infracción en idénticas circunstancias podrían recibir penas distintas, dependiendo únicamente de si fueron o no sentenciadas durante la vigencia de la ley intermedia más favorable. *Íd.*, pág. 62. pág. 62.

**III.**

En el presente caso, el señor Báez Acosta nos solicitó la revocación de la *Resolución* de la JLBP, mediante la cual se concluyó que dicha agencia carecía de jurisdicción para atender el caso.

Como único señalamiento de error esgrimido, el Recurrente sostiene que la JLBP erró al aplicar retroactivamente la ley Núm. 85-2024 y, consecuentemente, declararse sin jurisdicción, en clara contravención a la prohibición de aplicación de leyes *ex post facto*. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración se desprende que el señor Báez Acosta cumple una condena de ciento ochenta (180) años, seis (6) meses y un (1) día por la comisión de varios delitos, a saber: (1) tentativa de asesinato, (2) asesinato en primer grado, (3) apropiación ilegal agravada, (4) resistencia u obstrucción a la autoridad, (5) daños, (6) daño agravado, (7) fuga, (8) robo, (9) robo de vehículo de motor y (10) secuestro (tres cargos), conforme al Código Penal de 1974. Igualmente, se encuentra extinguiendo la referida pena por múltiples infracciones a la Ley de Armas, *supra*, y la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias Controladas de Puerto Rico". Consta, además, que el Recurrente fue sentenciado en los años 1997 y 1998 por los referidos delitos, relacionados con hechos cometidos en el año 1997.

Surge de la documentación examinada que, tras la aprobación de la Ley Núm. 85-2022, *supra*, el DCR elaboró una hoja de liquidación de sentencia en el presente caso, modificando el término mínimo para la concesión de libertad bajo palabra del recurrente, el cual se fijó para el 9 de septiembre de 2024. Sin embargo, la vista señalada para esa fecha fue suspendida con el fin de corroborar la jurisdicción de la Junta. En atención a ello, la JLBP emitió una *Resolución* en la que concluyó que, tras la aprobación de la Ley Núm. 85-2024, *supra*, carece de jurisdicción para atender los casos de personas convictas por el delito de secuestro.

Conforme adelantáramos en los acápites anteriores, nuestro ordenamiento jurídico proscribe la aplicación de leyes *ex post facto*.

En dichos casos, el elemento decisivo radica en determinar si la ley cuya aplicación retroactiva se propone resulta más onerosa o desfavorable que la que estaba vigente al momento en que ocurrieron los hechos. *González Fuentes v. ELA, supra*, pág. 415.

En concordancia con lo anterior, nuestro máximo foro judicial ha reconocido que resulta incompatible con la protección contra leyes *ex post facto* aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra. *Íd.* pág. 409.

En el presente caso, el recurrente sostiene que la aplicación de las exclusiones del derecho a ser considerado para el privilegio de libertad bajo palabra establecidas mediante la Ley 85-2024, *supra*, violenta, a todas luces, la prohibición constitucional en contra de las leyes *ex post facto* y la jurisprudencia vigente.

Tras un análisis ponderado y comprensivo del expediente ante nuestra consideración, hemos arribado a la conclusión de que la JLBP actuó correctamente al determinar que carecía de autoridad para atender el presente caso. Tal determinación, a nuestro juicio, se ajusta al marco constitucional aplicable. Nos explicamos.

En el caso de autos, el señor Báez Acosta se encuentra cumpliendo una larga condena por diversos delitos, entre ellos tres (3) cargos de secuestro y múltiples infracciones a la derogada Ley de Armas, *supra*, por hechos cometidos en el año 1997. Este fue procesado y sentenciado conforme al Código Penal de 1974, legislación que estaba vigente tanto al momento de la comisión de los hechos como al dictarse las *Sentencias* en los años 1997 y 1998. Dicho Código expresamente excluía a los convictos que habían utilizado un arma de fuego en la comisión de cualquier delito grave o su tentativa, incluyendo el secuestro, de disfrutar del beneficio de libertad bajo palabra. Por lo tanto, conforme al ordenamiento jurídico existente en aquel momento, el señor Báez Acosta no tenía

derecho a ser considerado para el referido privilegio. En este sentido, la reafirmación dispuesta en la Ley Núm. 85-204, *supra,* sobre la inaplicabilidad del privilegio de libertad bajo palabra no cambió la realidad jurídica del señor Báez Acosta. Es decir, en la actualidad, el recurrente no se está enfrentando a una situación más desfavorable u onerosa a la existente al momento de la comisión de los delitos antes mencionados.

El hecho de que la Ley Núm. 85-2024, *supra,* enmendó la Ley Orgánica de la JLBP y el Código Penal para excluir expresamente de su jurisdicción a las personas convictas por el delito de secuestro no cambia la realidad fáctica del caso de autos. Esto pues, la aplicación retroactiva de dicha disposición a una persona sentenciado bajo el régimen del Código Penal de 1974 por cometer el delito de secuestro utilizando un arma de fuego no conlleva la privación de un beneficio existente a la fecha en que se perpetró el delito. Lo anterior responde a que la cláusula constitucional que prohíbe las leyes *ex post facto* se activa únicamente cuando el estado altera retroactivamente los efectos de una condena o agrave la situación de un convicto mediante la supresión de beneficios o privilegios que estaban disponibles bajo la ley vigente al momento de la conducta delictiva.

Dicho de otro modo, aplicar la exclusión implementada por la Ley Núm. 85-2024, *supra,* al caso específico del señor Báez Acosta no conlleva una modificación desfavorable de su situación jurídica, pues este nunca tuvo la posibilidad de cualificar para el programa en cuestión. Así pues, no se le está brindando un tratamiento más gravoso al que existía al momento de cometer los hechos por los cuales se encontró culpable.

De otra parte, en el presente caso no es de aplicación el principio de favorabilidad. Ello es así, pues a pesar de que la Ley Núm. 85-2022, supra, podría resultar más favorable en cuanto al beneficio de libertad bajo palabra, esta no resulta ser una ley

intermedia, pues su vigencia fue posterior a la fecha en la que el recurrente fue sentenciado.

En vista de lo anterior, concluimos que la JLBP actuó correctamente al determinar que no posee jurisdicción sobre la petición del señor Báez Costa, pues del expediente ante nuestra consideración se desprende que éste fue sentenciado por el delito de secuestro y por haber utilizado un arma de fuego en la comisión de dicho delito. A causa de lo antes establecido, el recurrente nunca fue elegible para participar del privilegio de libertad bajo palabra.

En suma, concluimos que el señor Báez Acosta no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones